**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PEDRO JOAQUIN AGUILERA-MERLO,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

**CASE NO.** 5:26-CV-03715-CTS

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

On July 5, 2026, Petitioner Pedro Joaquin Aguilera-Merlo ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that he is being held in violation of the Constitution and laws of the United States. (*See generally* Pet.) On July 13, 2026, Respondents filed an Answer to the Petition.[1] (Ans., ECF No. 7.) On July

[1] The Answer attaches the following documents, all dated May 28, 2026: ICE Form 71-091, Notice of Removal ("Exhibit 1"); Form I-871, Notice of Intent/Decision to

16, 2026, Petitioner filed his Reply. (Rep., ECF No. 8.) On September 15, 2026, the Court ordered Respondents to file additional documents within seven days and set a schedule for additional briefing related to those documents. (ECF No. 10.) On September 22, 2026, at 4:02 p.m., Petitioner filed a status report noting that Respondents had not yet complied with the Court's order and attaching some of the required documents. (ECF No. 11.) The same day, at 4:54 p.m., Respondents filed the required documents, and noted that "Respondents have no additional arguments to present aside from what was argued in its [sic] answer." (ECF No. 12.) For the reasons set forth below, the Court GRANTS the Petition and ORDERS Respondents to release Petitioner from custody immediately.

## II. BACKGROUND

Petitioner first entered the United States sometime prior to July 28, 2005, as on that date he was ordered removed—*in absentia*—by an immigration judge ("IJ") in San Antonio, Texas. (ECF No. 12, Ex. A; *see* Ans. 2.[2]) Respondents' records reflect that Petitioner thereafter voluntarily departed the United States on March 26, 2009. (Ans. Ex. 2.)

Petitioner re-entered the United States in 2022. The Petition alleges that he is now married and the father of three children, and that the entire family entered the United States on September 2, 2022. (Pet. 10.) In contrast, Respondents' documents reflect an entry date of February 9, 2022. (Ans. Ex. 1, at 6; Ans. Ex. 2; Ans. Ex. 3, at 14.) For purposes of the instant order, however, it is immaterial whether Petitioner re-entered the United States with his family on "2/9/22" or

---

Reinstate Prior Order ("Exhibit 2"); Form I-213, Record of Deportable/ Inadmissible Alien ("Exhibit 3"); and Form I-200, Warrant for Arrest of Alien ("Exhibit 4"). (Ans., Exs. 1 through 4, ECF No. 7 at 5–20).

[2] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

"9/2/22." When they entered, they were initially detained, then released and directed to appear for ICE check-ins. (Pet. 10.) One of the exhibits to the Answer, an I-213 form prepared at the time of Petitioner's re-detention on May 28, 2026, indicates that, since Petitioner was already subject to a final order of removal when he entered in 2022, he was released under an Order of Supervision ("OSUP") and served the same day with a Form I-871, Notice of Intent/Decision to Reinstate Prior Order of Removal, though neither of these documents is in the record before the Court. (Ans. Ex. 3, at 14.) After being released in 2022, whether it was in February or September, Petitioner and his family attended ICE check-ins as required for years, and they have continuously resided in the United States since. (Pet. 10.)

On May 28, 2026, Petitioner presented himself at a standard ICE check-in and was arrested by ICE agents without prior notice. (*Id.* at 11.) Respondents' records reflect that, on that day, Petitioner was served with a Notice of Revocation of Release form indicating that his release was being revoked pursuant to 8 C.F.R. § 241.4(*l*) because "the purposes of release have been served." (Ans. Ex. 1, at 6–7.) This form was signed by "E. Vega, SDDO." (*Id.* at 7.)

Petitioner thereafter sought custody review by the Immigration Court, but the Adelanto Immigration Court determined that it lacked bond jurisdiction. (*Id.* at 13.) He also moved to re-open his immigration proceedings—a motion granted by an IJ on June 30, 2026. (ECF No. 12, Ex. B.) Thus, by the time the Petition and Answer in this case were filed, the removal order to which Petitioner had previously been subject had been vacated. (*Id.*; ECF No. 11, at 2.)

Petitioner argues, *inter alia*, that his detention violates his procedural due process rights and the Administrative Procedure Act ("APA"). (Pet. 15–26.)

///

///

///

## III. DISCUSSION

At the time he was re-detained on May 28, 2026, Petitioner was subject to a final order of removal—the one issued *in absentia* in 2005. (ECF No. 12, Ex. A.) The detention of noncitizens subject to final orders of removal is governed by 8 U.S.C. § 1231(a) ("Section 1231(a)"). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (noting that Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed'"). That statute states that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Detention is authorized during the removal period.[3] 8 U.S.C. § 1231(a)(2)(A). "Individuals released after the removal period remain subject to terms of supervision." *Johnson*, 596 U.S. at 579.

Once a noncitizen subject to a final order of removal has been released from custody, the revocation of that release is governed by 8 C.F.R. §§ 241.4(*l*) and 241.13(i), "which require that 'upon revocation' the alien 'be notified of the reasons for revocation of his or her release' and given 'an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.'" *Trifonov v. Noem*, No. 5:25-CV-03460-DOC-JDE, 2025 WL 3763371, at *2 (C.D. Cal. Dec.

---

[3] Certain individuals may be detained for longer than 90 days. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Johnson*, 596 U.S. at 578–79. Even here, however, continued detention is permissible "only for the time 'reasonably necessary' to effect removal because indefinite detention would run affront with Fifth Amendment Due Process rights." *Burunsuzyan v. Noem*, No. 5:26-CV-00049-RGK-AGR, 2026 WL 246067, at *5 (C.D. Cal. Jan. 27, 2026).

22, 2025) (quoting 8 C.F.R. §§ 241.13(i)(3) and 241.4(*l*)). "Both 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4 were intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Id.* (quoting *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (internal quotations omitted)). Thus,

> [w]hen ICE makes the determination that a noncitizen's OSUP should be revoked, the regulations require that certain procedural requirements be followed. The noncitizen is entitled to notice of the reasons for revocation of release and an "informal interview promptly after his or her return to [ ] custody to afford [him or her] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3); *see Hoac*, 2025 WL 1993771, at *3. The two provisions differ in that § 241.4(l)(2) grants authority to revoke release to only the "Executive Associate Commissioner" or a "district director," when revocation is in the public interest and circumstances do not reasonably permit referral of the case to the "Executive Associate Commissioner"; whereas § 241.13 "does not limit the authority to revoke release to certain designated officials." *Pogosyan v. Bondi*, 2026 WL 544717, at *3 (C.D. Cal. Feb. 23, 2026); *Gazazyan v. Bondi*, 2025 WL 3898484, at *5 (C.D. Cal. Nov. 7, 2025).

*Tanashyan v. Mullin*, No. 5:26-CV-04455-SP, 2026 WL 2538250, at *4 (C.D. Cal. Aug. 27, 2026).

Here, the Notice of Revocation of Release for Petitioner's May 28, 2026 re-detention makes clear that ICE revoked Petitioner's release "pursuant to 8 C.F.R. § 241.4(*l*)" and not 8 C.F.R. § 241.13. (Ans. Ex. 1.) However, Respondents did not follow the requirements of 8 C.F.R. § 241.4(*l*) ("Section 241.4(*l*)") in revoking Petitioner's release. Specifically, the signatory on the Notice of Revocation of Release form is one "E. Vega," whose title is given as "SDDO." (Ans. Ex. 1, at 7.)

Several cases in this district have recognized that an "SDDO" is a "Supervisory Detention Deportation Officer"—and that a Supervisory Detention Deportation Officer is not authorized to revoke release under Section 241.4(*l*). *See M.P.P.P. v. Santacruz*, No. 2:26-CV-05246-RAO, 2026 WL 1601908, at *4 (C.D. Cal. June 1, 2026) ("Here, the Notice of Revocation notice was signed by . . . an "SDDO," or Supervisory Detention and Deportation Officer. . . . A Supervisory Detention and Deportation Officer is not one of the officials identified in the regulation."); *Zakaryan v. Bondi*, No. EDCV 26-0384 JGB (SKX), 2026 WL 713014, at *1, 5 (C.D. Cal. Feb. 3, 2026) (noting that the Notice of Revocation of Release was signed by "SDDO N. McKenna" and stating that "it is not clear that Supervisory Detention and Deportation Officer N. McKenna . . . holds the authority to revoke Petitioner's order of supervision"); *see also Gazazyan v. Bondi*, No. 5:25-CV-02599-SRM-DTB, 2025 WL 3898484, at *6 (C.D. Cal. Nov. 7, 2025) ("[T]here is no evidence . . . to show that McKenna's role as the 'Supervisory Detention Deportation Officer' equates to that of" one of the individuals authorized by the regulations.); *Tiraturian v. Bondi*, 817 F. Supp. 3d 883, 887 (C.D. Cal. 2025) (holding that an unnamed SDDO was not authorized to revoke an OSUP); *Cruz v. Rios*, No. EDCV 26-01374-MWF, 2026 WL 973367, at *3 (C.D. Cal. Apr. 8, 2026) ("[A] 'Supervisory Detention & Deportation Officer,' . . . is not one of the officials identified in the regulation.").

In addition, it appears that, to the extent Petitioner received the informal interview required by the regulations, it was conducted the same day he was re-detained. (Ans. Ex. 1, at 8.) Courts have raised questions about the adequacy of an informal interview conducted on the same day that release is revoked. *See M.P.P.P.*, 2026 WL 1601908, at *3 (noting that the "the informal interview occurred on the same day that Respondents served the Notice of Revocation and arrested Petitioner" and that "[c]ourts considering similar circumstances have raised concerns with statutory compliance and due process where the government

conducts the informal interview immediately upon issuing a notice of revocation, thereby 'essentially bar[ring] the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful.'" (quoting *Kiwana v. LaRose*, No. CV 25-3678-JES (SBC), 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026)); *Velasquez Jimenez v. Mullin*, No. EDCV 26-356-AGR, 2026 WL 1455385, at *6 (C.D. Cal. May 18, 2026) ("Courts have found that, 'when the informal interview is conducted on the same day the Notice is issued, the Government essentially bars the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful.'" (quoting *Kiwana*, 2026 WL 102661, at *6)); *Cruz*, 2026 WL 973367, at *3 (finding that informal interview conducted the same day that petitioner was detained and served with a notice of revocation likely did not comport with due process, as "Courts considering similar circumstances have found due process concerns where the government conducts the informal interview immediately upon issuing a notice of revocation, thereby essentially bar[ring] the noncitizen from being able to submit any evidence or information that may show revocation of their release is unlawful" (internal quotation omitted).)

The Court also questions the adequacy of the notice provided to Petitioner regarding the reasons for the revocation of his release. The Notice of Revocation of Release form states that Petitioner's release was revoked because "[t]he purposes of release ha[d] been served." (Ans. Ex. 1, at 6.) Yet nothing had changed in the approximately four years since Petitioner had been released on an OSUP in 2022. As the 2022 OSUP is not in the record, the Court cannot tell what the purposes of release were, let alone why they might have been deemed to be satisfied as of May 28, 2026 but not any time before that. A number of courts have found that vague, boilerplate language in the Notice of Revocation of Release form is insufficient to comply with the notice requirement of Section 241.4(*l*). *See M.P.P.P.*, 2026 WL 1601908, at *2 (finding that the Notice of Revocation "identified no concrete facts

supporting revocation" and "failed to meaningfully notify Petitioner 'of the reasons for revocation' "); *Cruz*, 2026 WL 973367, at *2–3 (finding that constitutionally and regulatory adequate notice was not provided because the regulations "require, at a minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond" (quoting *Vo v. Lyons*, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026)); *Velasquez Jimenez*, 2026 WL 1455385, at *4 ("Because the government gave Petitioner only a boilerplate notice, the government failed to comply with applicable regulations and deprived Petitioner of due process.").

Despite the Court's significant doubts regarding the adequacy of the notice and opportunity to respond provided to Petitioner, the factual record before the Court is not sufficiently developed to make final findings on these points. However, there is no need to do so. The official who revoked Petitioner's release did not have the regulatory authority to do so, and thus the revocation of Petitioner's release was in violation of the applicable regulation under which Respondents acted. Section 241.4(*l*)(2) permits release to be revoked when the "purposes of release have been served," but only when "a specific type of official makes specific findings." *Herrera Cordova v. Blanche*, No. 5:26-CV-05266-KES, 2026 WL 2861605, at *5 (C.D. Cal. Sept. 23, 2026). Thus, it is "[d]ispositive here . . . that Respondents did not properly give [Petitioner] notice because the ICE official who gave him the Notice did not have the authority to do so under 8 C.F.R. § 241.4(l)(2)." *Gazazyan*, 2025 WL 3898484, at *4.

As previously noted, the regulation at issue here was "intended to provide due process protections to noncitizens following the removal period as they are considered for . . . possible revocation of release." *Trifonov*, 2025 WL 3763371, at *2. Nor is there any question but that government agencies must follow their own regulations. *Id.* at *3. "Numerous district courts, including courts in the Ninth

Circuit, have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Constantinovici*, 806 F. Supp. 3d at 1164 (internal quotations omitted). The specific regulation limiting authority to revoke release "is not meaningless. Entrusting the revocation decision to high-ranking officers with the agency ensures that the discretionary decision to revoke supervision is well-founded." *Jacome v. Marin*, No. 5:26-cv-02149-MRA-BFM (C.D. Cal. May 29, 2026), ECF No. 30, at 6, *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 121958, *2 (C.D. Cal. June 2, 2026); *see also Tanashyan*, 2026 WL 2538250, at *5 (granting habeas relief and ordering immediate release based on the respondents' failure to follow their own regulations in revoking the petitioner's release, because Notice of Revocation of Release form was signed by an assistant field office director, who was not authorized to revoke release).

Therefore, based on Respondents' failure to follow their own regulations, habeas relief is warranted. Petitioner's re-detention was unlawful, and he should thus be immediately released from custody. *Tanashyan*, 2026 WL 2538250, at *5 (ordering immediate release after holding that fact that unauthorized official revoked release violated Section 241.4(*l*) and that "habeas relief is warranted because respondents' failure to follow the regulations violated petitioner's due process rights"); *M.P.P.P.*, 2026 WL 1601908, at *4 (finding that the petitioner's immediate release was "required to meaningfully remedy the regulatory violations concerning the revocation of her release" and noting that, while "Respondents urge that even if Petitioner substantiates a violation of a particular regulatory procedure here, the appropriate remedy would be to rectify that specific procedural issue, rather than order Petitioner's release" but that "courts confronted with similar facts have concluded that re-detention is unlawful and have ordered release"); *Cruz*, 2026 WL 973367, at *4 (ordering immediate release despite fact that the respondents had "urge[d] that 'even if there were some violation of a particular

regulatory procedure here . . . the appropriate remedy would be to rectify that specific procedural issue'").

Finally, the Court notes that the arguments raised in Respondents' Answer in support of Petitioner's continued detention were limited to the assertion that Petitioner was subject to a reinstated removal order and that detention is mandatory for reinstated removal orders. (Ans. 2–4.) As noted above, however, Petitioner was no longer subject to a removal order by the time the Answer was filed. (ECF No. 12 Ex. B.) The arguments raised in support of continued detention are thus not persuasive.

## IV. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. Judgment shall be entered GRANTING the Petition; and
2. Respondents MUST RELEASE Petitioner **Pedro Joaquin Aguilera-Merlo (A 098-895-649)** from custody within 24 hours of entry of this Order under conditions of supervision no more onerous than those to which he was subject prior to his May 28, 2026 re-detention.

DATED: September 29, 2026

CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE